UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEWART TITLE GUARANTY
COMPANY,

                Plaintiff,

      v.

VITRUVIAN DESIGN LLC ET AL.,

                Defendants.

CASE NO. 2:26-cv-00543-JHC

ORDER

# I
## INTRODUCTION

This matter comes before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss. Dkt. # 7. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. Being fully advised, for the reasons below, the Court GRANTS IN PART and DENIES IN PART the motion.

# II
## BACKGROUND

The Court takes as true the facts alleged in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It also takes judicial notice of the docket and filings in the King County Superior Court foreclosure action—*Lea Hill Owners Association v. Andrew Philips Joseph et al.*,

ORDER - 1

No. 22-2-14300-2—and the fact of the parties' July 2025 correspondence, attached to the declarations of Joseph McIntosh and Jon S. Bogdanov (Dkt. ## 8 & 10). *See Logg v. TIG Ins. Co.*, 2022 WL 3042277, at *3 (W.D. Wash. Aug. 2, 2022).

The instant action concerns an apartment at 31412 106th Pl. SE, Apt. L2, Auburn, WA 98092 (the Property). Dkt. # 1 at 2. In December 2021, Andrew Philips Joseph obtained a loan from Banner Bank (Banner) to purchase the Property. *Id.* Joseph's loan was secured by a Deed of Trust (the DOT). *Id.*

It is undisputed that after the sale of the Property to Joseph, the DOT encumbered the Property. *See id.*; *see also* Dkt. # 7 at 2. It is also undisputed that the DOT appointed the Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Banner's loan and included a MERS Rider, "which further describes the relationship between [Banner] and MERS, and which is incorporated into and amends and supplements [the DOT]." Dkt. # 8 at 6; *see also* Dkt. The MERS Rider provides, among other things, that: (1) MERS is appointed as "the Nominee for [Banner] to exercise the rights, duties and obligations of [Banner] as [Banner] may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part [the DOT]"; (2) Banner is "the beneficiary under [the DOT]"; and (3) "[a]ny notice required by Applicable Law or [the DOT] to be served on [Banner] must be served on MERS as the designated Nominee for [Banner]." Dkt. # 8 at 6–7.[1]

On September 6, 2022, the Lea Hill Owners Association sued Joseph and MERS in King County Superior Court, alleging that Joseph owed it $11,482.70 in assessments, late fees, interest charges, and attorneys' fees. Dkt. # 1 at 2; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al.*, No. 22-2-14300-2, Dkt. # 1. Banner was not named as a defendant in the

---

[1] Neither party has provided the Court with a copy of the DOT. *See generally* Dkt. The Court thus relies on the purported excerpts of this document in the parties' filings.

ORDER - 2

action. *See generally id.* The Lea Hill Owners Association then recorded a lien against the Property in King County under Auditor's File No. 20220518001179. Dkt. # 1 at 2. Joseph and MERS did not appear in the action, so the court entered an Order of Default and Default Judgment against all defendants in the action. *Id*. at 3; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al*., No. 22-2-14300-2, Dkt. # 17. The court then issued an order of sale, and Defendant Vitruvian Design LLC (Vitruvian) purchased the Property via a sheriff's deed, recorded in King County under Auditor's File No. 20240521000425. Dkt. # 1 at 3; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al*., No. 22-2-14300-2, Dkt. ## 18 & 26.

On July 29, 2024, Vitruvian entered into a Purchase and Sale Agreement with Lorenzo Deon Williams for the sale of the Property. Dkt. # 1 at 3. The transaction was facilitated by Defendants Matthew Toth and Danielle Gore—two individuals who "acted on behalf of Vitruvian" at all relevant times. *Id*. at 2–3.[2] The sale closed on August 25, 2024, with Williams receiving a statutory warranty deed to the Property recorded in King County under Auditor's File No. 20240828000309. *Id*. at 3.

Before the sale closed, however, Banner filed a motion on the King County Superior Court foreclosure action docket, requesting that the court vacate the Order of Default and Default Judgment against Banner pursuant to CR 60. *See id*.; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al*., No. 22-2-14300-2, Dkt. # 33. Vitruvian was served with a copy of the motion on August 21, 2024, and filed an opposition brief on September 13, 2024. *See* Dkt. ## 1 at 3, 8 at 8; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al*., No. 22-2-

---

[2] The Complaint does not specify the relationship between Toth and Gore and Vitruvian. *See generally* Dkt. # 1. Defendants' filings, however, suggest that Toth and Gore are both members and agents of Vitruvian. *See* Dkt. ## 7 at 8, 11 at 6.

ORDER - 3

14300-2, Dkt. ## 42 & 52. According to the Complaint, "[a]t no point prior to delivering the statutory warranty deed to Williams did Defendants . . . notify Williams of Banner Bank's motion and claims." Dkt. # 1 at 3.

On October 4, 2024, the King County Superior Court denied Banner's motion. *See* Dkt. # 8 at 10; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al.*, No. 22-2-14300-2, Dkt. # 57. This order (the October 4 Order) did *not* discuss the substance of Vitruvian's or Banner's arguments; it merely stated that Banner "does not have standing to bring this action under CR 60" because it "is not a party to this action." *See id.* The Complaint is silent as to whether there was any communication between Defendants and Williams after the October 4 Order was issued. *See generally* Dkt. # 1. Instead, it skips ahead to December 3, 2024—the day that Banner "sent a Notice of Default to Williams, in which it informed him that Banner Bank had declared Joseph in default on the loan secured by the DOT." *Id.* at 3. Banner then recorded a Notice of Trustee's Sale in King County under Auditor's File No. 20250121000002, and informed Williams that it was seeking to sell the Property in a trustee's sale to be held on June 20, 2025. *Id.* at 4.

On June 20, 2025, Banner purchased the Property at the trustee's sale and recorded a trustee's deed in King County under Auditor's File No. 20250701001022. *Id.* Around the same time, Banner also mailed notice to the Property's occupants indicating that it had "purchased the Property at a trustee's sale, and claiming it was entitled to possession of the Property on July 10, 2025." *Id.* At this point, Williams contacted his insurer—Plaintiff Stewart Title—"and informed it of Banner Bank's threats to sell his property at a foreclosure sale." *Id.* Williams's counsel then sent a letter to Defendants informing them of the situation. *See id.*; *see also* Dkt. # 8 at 12–13.

This letter to Defendants from Williams's counsel, dated July 8, 2025, states:

ORDER - 4

> On June 20, 2025, Banner Bank sent to Mr. Williams a Notice, purporting to notify Mr. Williams of the sale of his Property by Banner Bank pursuant to a deed of trust recorded against the Property on 12/06/2021, and further directing Mr. Williams to vacate the Property by July 10, 2025. The deed of trust is an encumbrance against the Property. The purported sale and Notice constitute a challenge to Mr. Wiliams' right to possess and quietly enjoy the Property. Therefore, Vitruvian is in breach of the statutory warranty deed you provided to Mr. Williams, including the covenants of freedom from all encumbrances and the quiet and peaceable possession of such premises.

*Id.* It also states that Williams "tenders to Vitruvian the defense of this matter, and demands that Vitruvian immediately take all necessary steps to protect and preserve [his] right to occupy the Property, including but not limited to retaining legal counsel to respond to the notice, engaging with the issuing party, and bearing all costs associated with resolution of this dispute." *Id.* And it requests that Defendants "[p]lease confirm in writing by July 14, 2025, whether [they] accept the tender and what steps [they] intend to take[,]" noting that failure to respond or accept tender may result in Williams taking legal action to enforce his rights under the statutory warranty deed. *Id.*

Two days after this letter was sent, Banner filed suit against Williams in King County Superior Court seeking restitution of the Property. Dkt. # 1 at 4; *see also Banner Bank v. Lorenzo Deon Williams et al.*, No. 25-2 20174-1, Dkt. # 1. The Complaint describes this action as an "unlawful detainer action" and states that a show cause hearing was scheduled for July 29, 2025. *See id.* at 4. It does not provide any other details about the action. *See generally id.*

On July 16, 2025, Vitruvian sent a letter to Plaintiff accepting tender subject to a "full reservation of rights[,]" particularly with respect to the timeliness of the tender. *See* Dkt. # 8 at 14–15. The letter also states that it is Vitruvian's position that "[t]he underlying foreclosure decree extinguished the deed of trust interest of Banner Bank, which had designated MERS as its nominee" and thus "the trustee's deed is a nullity." *Id.* That same day, Williams's counsel responded to Vitruvian's letter, informing Defendants that "facing a pending unlawful detainer

ORDER - 5

action, with a Show Cause hearing scheduled for July 29, 2025, and facing imminent eviction, Williams was forced to negotiate and accept Banner Bank's demand to pay it $243,886.59 in exchange for Banner Bank dismissing the unlawful detainer action and quitclaiming any interest it may claim in the Property." Dkt. # 1 at 4–5; *see also* Dkt. # 10 at 5. Williams's counsel also formally demanded that Vitruvian agree to make the settlement payment to Banner, and to compensate Williams for the attorneys' fees and costs incurred during the settlement negotiations. *See id*. Vitruvian refused, and so Plaintiff, acting on behalf of its insured, was purportedly "forced to defend title to the Property" and "pay Banner Bank $243,886.59 to clear title." *See* Dkt. # 1 at 5.

Plaintiff[3] now brings this action against all Defendants, alleging breach of statutory warranty deed and seeking an award of $243,886.59 plus interest, attorney fees, and costs. *See id*. at 5–6.

### III
### DISCUSSION

Defendants move to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6). *See generally* Dkt. # 7. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads

---

[3] According to the Complaint, Plaintiff is entitled to bring this action because it is "the assignee of its insured claimant, Lorenzo Deon Williams, and is subrogated pursuant to the rights, claims, and causes of action of its insured pursuant to the express terms of the applicable title insurance policy and principles of subrogation." Dkt. # 1 at 1.

ORDER - 6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). It may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). And a court can (and should) dismiss a complaint if it lacks a "cognizable legal theory" or "sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Defendants' primary argument is that the Complaint fails to state a claim for relief because Plaintiff's claims are premised upon an omission of material fact—that the DOT was "judicially extinguished by a final state superior court foreclosure judgment" before Defendants sold the Property to Williams—and so there was no breach of the warranty against encumbrances. Dkt. # 7 at 7. Defendants also argue that they did not breach the warranty of defense because: (1) Vitruvian "successfully" defended Williams's title against Banner in the King County Superior Court foreclosure action; (2) Defendants did not fail to defend in the non-judicial foreclosure proceedings because they were unaware that Banner was attempting to foreclose on the Property before July 2025; and (3) despite Williams's waiver of remedies, Vitruvian still accepted tender and proposed a potential post-sale defense to Williams's counsel. *See id*. And they say that Plaintiff's claims against Toth and Gore are without merit, as the statutory warranty deed was given to Williams by Vitruvian—a LLC—and thus Toth and Gore

ORDER - 7

cannot be held personally responsible for any damages to Plaintiff as a result of Vitruvian's purported breach.  *Id*. at 8.

The Court addresses each argument in turn.

A.    Did the King County Superior Court foreclosure action "judicially extinguish" the DOT?

It is undisputed that a party having an interest in a property, such as Banner, generally must be joined in a foreclosure action for the action to affect their interests.  *See generally* Dkt. ## 7 & 9; *see also Valentine v. Portland Timber & Land Holding Co.*, 15 Wn. App. 124, 128, 547 P.2d 912 (1976) ("[J]oinder of any person having an interest in the property is essential in that, if not joined, [their] interest will not be affected by the foreclosure."); *MB Const. Co. v. O'Brien Com. Ctr. Assocs.*, 63 Wash. App. 151, 158, 816 P.2d 1274 (1991) ("[A] mortgagee's interest cannot be affected by a lien foreclosure unless the foreclosing party joins the mortgagee as a party to the foreclosure action.").  What is disputed, however, is whether joining MERS— the beneficiary's nominee—automatically extinguishes the interests of the beneficiary in the property under Washington law.  The Court concludes that it does not.

Although neither party has provided a case that is directly on point, *see generally* Dkt., the Court finds that the principles and dicta from Plaintiff's cited cases are more apposite.  As held by the Supreme Court of Washington, MERS is not the automatic "beneficiary" under a deed of trust, nor can it be characterized as the indisputable "holder" of the deed by statute or as the proper beneficiary by way of contract or agency principles.  *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wash. 2d 83, 99–101, 108, 285 P.3d 34 (2012).  Instead, if the deed names MERS as the nominee (and MERS does not hold the promissory note), MERS lacks certain powers, including the power to appoint a trustee to carry out a nonjudicial foreclosure.  *Id*. at 89.  Other Washington courts have similarly reiterated that it is the "actual holder of the note," not MERS, who has the authority to enforce it "regardless of MERS's identification in the deed of trust."

ORDER - 8

*Ortega v. Nw. Tr. Servs., Inc.*, 179 Wash. App. 1033, at *7 (2014).[4]  And while the Court agrees with Defendants that these cases do not conclusively hold that MERS *cannot* serve as the beneficiary's nominee for other purposes, such as legal process, Defendants cite no case that conclusively holds that MERS *can* serve in this role.  *See generally* Dkt. ## 7 & 11.[5]  Defendants also fail to persuasively explain why the MERS system inherently overrides the general principle that a party having an interest in a property must be joined in a foreclosure action before its interests can be affected.  *See generally id.*

The Court thus finds no basis to assume that joinder of MERS in a foreclosure action, where MERS is the beneficiary's nominee and not the actual noteholder, is legally equivalent to naming the beneficiary in the action.  And so the Court cannot conclude that the default judgment in the King County Superior Court foreclosure action conclusively extinguished Banner's interests in the Property under Washington law.  The Court also does not find anything in that docket[6] or the excerpted portions of the DOT that would suggest otherwise.  And while Defendants attempt to characterize Banner's initiation of a non-judicial foreclosure of the

---

[4] *See also Larson v. Snohomish Cnty.*, 20 Wash. App. 2d 243, 278, 499 P.3d 957 (2021) (concluding that the bank "was not barred from foreclosing on the [property] simply because MERS was listed as the original beneficiary under the deed of trust" because "[i]t is undisputed that [the bank] holds the [note] and was entitled to enforce the deed of trust").

[5] Defendants' reply cites two cases in support of "the appropriateness of joining MERS as nominee to a title action" instead of the beneficiary—*Jackson v. Quality Loan Services Corporation*, 186 Wash. App. 838, 347 P.3d 487 (2015) and *Summerhill Village Homeowners Association v. Roughley*, 289 P.3d 645 (Wash. Ct. App. 2012).  Dkt. # 11 at 2.  But neither case holds that a beneficiary's interest in a property can be extinguished simply by joining MERS, the beneficiary's nominee, in the action.  *See Jackson*, 186 Wash. App. at 842 (stating that MERS "terminated its agency interest when it assigned its nominee interest in the deed of trust back to its principal, U.S. Bank as trustee"); *Summerhill*, 289 P.3d at 646 (concluding that a deed of trust was extinguished by a foreclosure action where MERS was joined and the loan was "secured by a deed of trust in favor of [MERS]").

[6] Defendants' argument—that the October 4 Order is evidence that the DOT was judicially extinguished, *see* Dkt. ## 7 at 3, 11 at 4—overlooks the fact that the Order's denial was based solely on Banner lacking standing to bring the motion because it was not a party to the action; the Order did not adjudicate the merits of the parties arguments nor reach a conclusion about the status of the DOT.  *See generally* Dkt. # 8 at 10; *see also Lea Hill Owners Association v. Andrew Philips Joseph et al.*, No. 22-2-14300-2, Dkt. # 57.

ORDER - 9

Property as an act of "poor judgment or communication[,]" *see* Dkt. ## 7 at 3, 11 at 4, the Court believes that there may be a simpler explanation: Banner initiated a non-judicial foreclosure action because it believed that its interests were not affected by a foreclosure action to which it was not a party. Accordingly, the Court finds no basis to conclude that the DOT was unequivocally extinguished by the King County Superior Court foreclosure action, and so it rejects Defendants' request to acknowledge this purportedly missing "fact."[7]

B.      Has Plaintiff plausibly pleaded breach of statutory warranty deed by Vitruvian?

It is undisputed that Vitruvian sold the Property to Williams via a statutory warranty deed. *See generally* Dkt. ## 1 & 7. It is also undisputed that under Washington law, a statutory warranty deed contains certain express covenants, including a warranty against encumbrances, a warranty of quiet enjoyment and possession, and a warranty of defense. *Id.*; *see also* RCW 64.04.030. What is disputed, however, is whether the Complaint plausibly alleges a breach of any of these covenants. *See generally* Dkt. ## 7 & 9. The Court concludes that it does.

*Breach of warranty against encumbrances.* A warranty against encumbrances covenants that title is conveyed "free of encumbrances." *Sadr v. Oney*, 2025 WL 3551398, at *2 (W.D. Wash. Dec. 11, 2025). In Washington, "'[e]ncumbrance' means a right, other than an ownership interest, in real property" and "includes mortgages and other liens on real property." RCW 62A.9A-102(a)(32); *see also Cranwell v. Mesec*, 77 Wash. App. 90, 109 n.20, 890 P.2d 491 (1995) ("An 'encumbrance' is a 'claim, lien, charge, or liability attached to and binding real property[.]'") (citing *Black's Law Dictionary* 527 (6th ed. 1990)). And breach occurs when a

---

[7] For the avoidance of any doubt, the Court clarifies that, although it is rejecting Defendants' argument that the DOT was automatically extinguished by the foreclosure action, it is *not* holding that the DOT remained intact at the time the Property was sold to Williams: it is simply holding that, based on the present record, it cannot conclude that Banner's interests were conclusively extinguished by the default judgment or the October 4 Order.

ORDER - 10

property is conveyed with an undisclosed encumbrance.  *See Drake v. Burgess*, 136 Wash. App. 1021, at *9 (2006).

Defendants argue that Plaintiff's claim fails because the DOT was "judicially extinguished" by the King County Superior Court foreclosure action and so it did not encumber the Property at the time of conveyance.  Dkt. # 7 at 7.  But as explained in part III(A) above, the DOT was not conclusively extinguished by the King County Superior Court foreclosure action.  And Defendants offer no argument for why the DOT, if not conclusively extinguished by that action, would not still encumber the Property at the time of sale to Williams.  *See generally* Dkt. ## 7 & 11.  The Court thus finds that the Complaint plausibly alleges that Vitruvian breached the warranty against encumbrances, and so it declines to dismiss this claim

*Breach of the warranty of quiet enjoyment and possession.*  A warranty of quiet possession and enjoyment "warrants to the grantee, [their] heirs and assigns, the quiet and peaceable possession of the property conveyed."  *Haley v. Hume*, 10 Wash. App. 2d 484, 494–95, 448 P.3d 803 (2019) (quoting *Rowe v. Klein*, 2 Wash. App. 2d 326, 335, 409 P.3d 1152 (2018)).  The warranty is "breached when the buyer of land is actually or constructively evicted by one who holds a paramount title that existed at the time of the conveyance."  *Id.*

Apart from the rejected argument on the extinguishment of the DOT, Defendants make no argument for dismissal of this claim.  *See generally* Dkt. ## 7 & 11.  And the facts in the Complaint, when viewed in the light most favorable to Plaintiff, appear to support a claim against Vitruvian for breach of the warranty of quiet enjoyment and possession.  *See generally* Dkt. ## 1 & 9.  The Court thus finds no basis to dismiss this claim.

*Breach of the warranty of defense.*  A warranty of defense "requires that the grantor provide a good faith defense to title."  *Edmonson v. Popchoi*, 172 Wash. 2d 272, 283, 256 P.3d 1223 (2011).  To establish breach, a plaintiff must show that: (1) a third party "assert[ed] a

ORDER - 11

superior right to the property, usually through a lawsuit that results in the grantee's actual or constructive eviction;" (2) the grantee made an effective tender of defense to the grantor; and (3) the grantor actually refused the tender. *Erickson v. Chase*, 156 Wash. App. 151, 158–59, 231 P.3d 1261 (2010).

Defendants first contend that there was no breach because they "successfully" opposed Banner's attempts to vacate the default judgment in the King County Superior Court foreclosure action, thereby "successfully defending Williams's title" against Banner. Dkt. # 7 at 7. But as discussed in part III(A) above, Banner was not a party to the King County Superior Court foreclosure action, and so Vitruvian's opposition did not necessarily defend Williams's title against Banner.

Defendants next contend that they did not breach the warranty of defense because: (1) they were unaware of Banner's foreclosure attempts until after the foreclosure was completed; and (2) upon learning of the foreclosure, Defendants accepted tender and proposed a post-sale title defense to Williams's counsel. *Id*. The Court notes that given the late notice to Defendants, it has serious doubts about whether Plaintiff will be able to prevail on this claim at trial. Yet Plaintiff need not establish that it will prevail to survive a motion to dismiss—it need only plead sufficient facts to support a cognizable theory that Defendants breached the warranty of defense. Here, Plaintiff has met this standard. The Complaint states that: (1) Williams's counsel tendered defense to Vitruvian before any settlement payment was made to Banner; and (2) Vitruvian did not accept tender on or before July 14, 2025—the deadline provided by Williams's counsel to accept such tender. *See* Dkt. # 1 at 4. The Court thus concludes that the Complaint plausibly alleges a claim against Vitruvian for breach of the warranty of defense, and so it declines to dismiss this claim.

ORDER - 12

Accordingly, Plaintiff has plausibly stated a claim for relief based on Vitruvian's alleged breach of three covenants in the statutory warranty deed—the warranty against encumbrances, the warranty of quiet enjoyment and possession, and the warranty of defense.[8]  The Court thus DENIES Defendants' Motion (Dkt. # 7) as to Plaintiff's claims against Vitruvian.

C.      Has Plaintiff plausibly pleaded breach of statutory warranty deed by Toth and Gore?

Because the statutory warranty deed was issued by Vitruvian, not Toth or Gore, the ability for Plaintiff to state a claim for relief against Toth and Gore depends on whether these individuals can be held personally liable for the acts of Vitruvian—an LLC for which they were acting on behalf of.  Under Washington law, the general rule is that members and managers of an LLC cannot be held personally liable for the LLC's debts, obligations, and liabilities.  *See* RCW 25.15.126; s*ee also Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wash. 2d 662, 674, 295 P.3d 231 (2013).  A court can, however, "pierce the corporate veil," i.e., disregard the corporate form and hold the individual defendants liable for any alleged misconduct, in "exceptional" circumstances.  *See Mika v. JBC Ent. Holdings, Inc.*, 195 Wash. App. 1052, at *5 (2016).  But before doing so, a plaintiff must first convince the court that: (1) "the corporate form was used to violate or evade a duty"; and (2) disregarding the corporate form is necessary "to prevent loss to an innocent party."  *Washington Water Jet Workers Ass'n v. Yarbrough*, 151 Wash. 2d 470, 503, 90 P.3d 42 (2004), *as amended* (May 27, 2004).  This requires more than a showing by plaintiff that they were harmed by a corporate entity and that they may be unable to recover due to the corporate entity's limited liability structure; it requires a showing of some sort of intentional

---

[8] To the extent that Defendants are also arguing for dismissal based on failure to plead proximate cause, such an argument is not fully developed in the motion nor is it mentioned in the reply.  *See* Dkt. # 7 at 8; *see also* Dkt. # 11.  The Court thus declines to address it.  *See, e.g.*, *Regan v. Berryhill*, 2018 WL 1523993, at *10 n.3 (N.D. Cal. Mar. 28, 2018) (declining to address an argument that was "abandoned" in the reply brief).

ORDER - 13

fraud, misrepresentation, or other misconduct by the entity's owners to their benefit and to the creditor's detriment. *See Meisel v. M & N Mod. Hydraulic Press Co.*, 97 Wash. 2d 403, 410–11, 645 P.2d 689 (1982).

Here, the Complaint pleads no facts that would allow the Court to disregard Vitruvian's corporate form. Per Plaintiff, the Court should pierce the corporate veil because the Complaint: (1) plausibly alleges that Toth and Gore "acted on behalf of Vitruvian"; (2) "it is plausible that the individual defendants used Vitruvian to violate or evade their seller duties to Williams"; and (3) "the corporate form of Vitruvian must be disregarded to prevent loss to Stewart Title, an innocent party." Dkt. # 9 at 11–12. But the Complaint pleads no facts that, if believed, would indicate that Toth and Gore engaged in any kind of wrongful or fraudulent corporate activity: the Complaint merely pleads that Toth and Gore conducted business on behalf of an LLC. *See generally* Dkt. # 1. As that is not a valid reason to pierce the corporate veil, the Court declines to do so.

Because the Court finds no basis to disregard Vitruvian's corporate form, it also finds no basis to hold Toth and Gore personally liable for the acts of Vitruvian. It thus concludes that the Complaint fails to plausibly allege breach of statutory warranty deed against Toth and Gore, and so it GRANTS Defendants' Motion (Dkt. # 7) as to these claims.

## IV
### CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (Dkt. # 7). Plaintiff's claims against Toth and Gore are DISMISSED WITHOUT PREJUDICE. The motion is otherwise denied.

//

ORDER - 14

Dated this 5th day of June, 2026.

John H. Chun
United States District Judge

ORDER - 15